IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| BETHEL CHAPEL AME CHURCH, INC. | ) )  )  ) |
| Plaintiff, | ) ) NO. 1:19-cv-00016 |
| v. | ) ) |
| | ) JUDGE CAMPBELL |
| CHURCH MUTUAL INSURANCE COMPANY | ) MAGISTRATE JUDGE HOLMES ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 31). Plaintiff filed a response to the motion (Doc. No. 35) and Defendant filed a reply (Doc. No. 41). Defendants filed a statement of material facts (Doc. No. 33) to which Plaintiff responded (Doc. No. 39). For the reasons stated below, Defendant's Motion is **GRANTED in part, DENIED in part**.

### I. BACKGROUND

Plaintiff Bethel Chapel AME Church, Inc. claims Defendant Church Mutual Insurance Company wrongfully denied coverage for damage to the church building caused by wind and hail. Plaintiff filed two claims for storm damage to the church building. The first claim was filed on June 23, 2017. (Aldrich Aff., Doc. No. 32-1). This claim alleged wind and hail damage to the church's metal roof, water damage inside the church, and damage to the shingle roof of the parsonage. (*Id.* at ¶¶ 3, 9). The date of loss was recorded as June 22, 2017. (*Id.* at ¶ 2). Staff Claims Representative Stephanie Aldrich stated that she reviewed "hail reports" on June 29, 2017, and that there was no hail at the church location on the reported dates of loss. (*Id.* at ¶ 7). The

1

insurance adjuster reported that the church metal roof had "installation issues" and that the interior water damage was "old." (*Id*. at ¶ 9). The adjuster determined that the only covered damage was to the parsonage (i.e. the rental home). (*Id*. at ¶ 14). Defendant issued a partial denial letter that "denied coverage for the reported damage to the main church building." (*Id*. at ¶ 17).

On March 13, 2018, Plaintiff reported a second claim for wind damage to the church metal roof. (Lokemoen Aff., Doc. No. 32-2 at ¶ 2). When Plaintiff reported the claim, the date of loss was recorded as November 18, 2017, but was later changed to "mid to late February [2018]." (*Id*. at ¶ 3). A different insurance adjuster determined that the damage was the same damage that was denied coverage in 2017, and Defendant denied the claim on that basis. (*Id*. at ¶¶ 7-9).

Thereafter, Helping Hands Home Improvement, who the Court understands is a roofing contractor, engaged the engineering firm Prosser & Associates to perform a storm damage inspection on the church roof. (Doc. No. 32-6). The Prosser Report found that there were "a number of wind damaged metal panels on the roof and a substantial amount of ancillary damage from hail strikes" and additional roof damage. (*Id*. at 3-4). The Prosser Report states that the damages was caused by a storm on June 22, 2017. (*Id*. at 2). However, during his deposition, Mr. Prosser stated that the June 22 date is incorrect, but did not suggest an accurate storm date. (Prosser Dep., Doc. No. 32-4 at 31).

In October 2019, Defendant hired engineer Mike Buchanan of EMC Structural Engineers to inspect the property, review and comment on the Prosser Report, and determine whether the alleged damage was caused by a hail or wind event. (Buchanan Dep., Doc. No. 32-3 at 13-15; Buchanan Rept., Doc. No. 32-7 at 1). Buchanan reported that neither hail nor wind cause damage to the roof and also identified problems with the roof installation. (Doc. No. 32-7 at 7).

Plaintiff brings claims for breach of contract, statutory bad faith, and for violation of the Tennessee Consumer Protection Act seeking compensatory damages, punitive damages, a statutory bad faith penalty of 25%, and attorneys' fees. (Comp., Doc. No. 1). Defendant moved for summary judgment on all claims. (Doc. No. 31).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595. The Court must consider only evidence that can be

presented in an admissible form at trial. *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012) ("The proffered evidence need not be in admissible form, but its content must be admissible.").

### III. ANALYSIS

As an initial matter the Court notes that the parties have failed to comply with the Local Rules with regard to motions for summary judgment. To assist the Court in identifying disputed issues of fact, the Local Rules require motions for summary judgment to be accompanied by a statement of material facts supported by a specific citation to the record. L.R.56.01(b). The opposing party must respond to the statement of facts by either agreeing that the fact is undisputed or demonstrating that the fact is disputed with specific citation to the record. L.R. 56.01(c). Defendant's Statement of Facts contains no citations to the record. Plaintiff's responses include minimal reference to the record – include only five citations. admits some of the facts are undisputed and disputes others with only five citations.[1] (*See* Doc. No. 39). Although Defendant did not include citations in the statement of undisputed fact, it did include detailed citations to the record in its memorandum, and the Court will review the motion. The parties are both cautioned to carefully adhere to the Local Rules in future filings.

A second problem with Defendant's evidentiary support for the motion is that a significant portion of the evidence in the affidavits upon which Defendant relies heavily is inadmissible hearsay. Federal Rule of Civil Procedure 56(c)(4) requires that affidavits used to support or oppose a motion for summary judgment be made on personal knowledge and "set out facts that would be admissible in evidence." With this standard in mind, the Court notes that both affidavits submitted

---

[1] One particularly egregious example is statement number two. Defendant states: "The Policy included coverage for wind and hail damage, but specifically excluded continuous or repeated seepage or leakage that occurs over a period of 14 days or more." (Doc. No. 39 at ¶ 2). No citation to the record is provided. Plaintiff responded: "Upon information and belief denied." (*Id.*) While it is clear Defendant is referring to some provision of the insurance policy, the insurance policy is over 200 pages. The statement of fact leaves the Court with no indication of the applicable provision or the basis for Plaintiff's objection.

4

by Defendants refer to statements made by third parties and to documents, reports, and photographs not in the record. For example, instead of providing copies of the insurance adjuster's report and associated photos, the claims representatives describe the contents of the reports, photos, and even the denial letters. Plaintiff, however, did not object to the admissibility of Defendant's evidence, and the Court will consider the evidence presented. *See MY Imagination, LLC v. M.Z. Berger & Co., Inc.*, 726 F. App'x 272, 276 n. 2 (6th Cir. 2018) (hearsay objections to consideration of affidavits and other evidentiary materials submitted on summary judgment are waived if not raised before the district court).

### A.     Breach of the Insurance Contract

Defendant agrees that the insurance policy covers wind and hail damage, but argues that the damage to the church was not cause by wind or hail and was instead caused by faulty roof construction which resulted in "continuous or repeated seepage or leakage of water," which is excluded under the policy. (Def. Mem., Doc. No. 32 at 7 ("The Policy clearly states that damage from a windstorm or hail is covered and extended water seepage is not covered.")).

The issue then is whether the damage to the church was caused by a wind or hail event, which is covered by the policy, or some other reason, which is excluded by the policy. On this point there remains an issue of fact. Each party has presented an engineer's report in support of their respective positions. (Doc. Nos. 32-7 and 36-1). One expert may prove to be more reliable or persuasive than the other. This question, however, is for a jury to decide.

Defendant's argument that there was not a hailstorm or windstorm on the original reported date of loss, June 22, 2017, which is also the date of loss identified in the Plaintiff's engineer's report, is misplaced. Defendant has not identified a policy provision that requires the claimant to identify correctly the precise date of the storm causing the damage. To the contrary, Defendant's

evidence indicates that it treats "date of loss" as somewhat flexible and that the coverage determination was unrelated to the alleged date of the storm. There is no indication that Defendant denied coverage for the claim because the alleged damage occurred outside the policy period.[2] On Plaintiff's first claim, damage to the Parsonage appears to have been a covered loss even though it was attributed to the same date of loss as the damage to the church roof and building, which is an indication that the date of the storm was not at issue. (*See* Aldrich Aff., Doc. No. 32-1 at ¶¶ 3, 7, 17). On Plaintiff's second claim, the date of loss was entered as November 18, 2017, but when the Pastor stated that he had "no idea" where the November date came from, the date of loss was changed to "mid to late February" – further indication that the date of an alleged storm is not necessarily determinative of coverage. (Lokemoen Aff., Doc. No. 32-2 at ¶¶ 2, 3).

Whether the engineer correctly identified the date the alleged storm damage occurred may speak to the credibility of the evidence. However, from the evidence presented, making all inferences in favor of the Plaintiff, the Court cannot conclude that no reasonable jury could find in favor of the Plaintiff. Accordingly, the Defendant's motion for summary judgement on the claim for breach of contract is DENIED.

## B. Bad Faith Denial of Coverage

Defendant argues that the bad faith claim should be dismissed because insurance coverage was properly denied, it appropriately and promptly investigated the claims, and the refusal to pay was in good faith.

To establish a claim for bad faith refusal to pay an insurance claim under Tenn. Code Ann. § 56-7-105, a plaintiff must show: (1) the policy of insurance must have become due and payable;

---

[2] The reference to the seepage having occurred over a period of five years was not connected to the coverage period, but was cited as the basis for the "seepage over time" exclusion in the policy. Moreover, whether the damage was the result of "seepage over time" is a disputed question of fact on which both parties' expert engineers have opined. (*See* Docs. No. 32-7 and 36-1).

6

(2) a formal demand for payment was made; (3) the insured waited 60 days after making demand before filing suit or there was refusal to pay prior to the expiration of the 60 days; and (4) the refusal to pay must not have been in good faith. *Bowery v. Berkshire Life Ins. Co.*, No. 3:11-cv-03, 2013 WL 1497339, at * 9 (E.D. Tenn. Apr. 11, 2013) (citing *Stooksbury v. Am. Nat'l Prop. & Cas. Co.*, 126 S.W.3d 505, 519 (Tenn. Ct. App. 2003)). "To discharge its duty to act in good faith, an insurer must exercise ordinary care and diligence in investigating the claim and the extent of damage for which the insured may be held liable." *Johnson v. Tenn. Famers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006). "The question of an insurance company's bad faith is for the jury if from all of the evidence it appears that there is a reasonable basis for disagreement among reasonable minds as to the bad faith of the insurance company in the handling of the claim." *Id.* at 371. "The question of an insurance company's bad faith is for the jury if from all of the evidence it appears that there is a reasonable basis for disagreement among reasonable minds as to the bad faith of the insurance company in the handling of the claim." *Id.* Plaintiff has the burden of proving Defendant refused to pay in bad faith. *Nylander v. Unum Life Inc. Co. of Am.*, 309 F. Supp. 3d 526, 544 (M.D. Tenn. 2018).

Plaintiff cites the following as evidence of Defendant's alleged bad faith refusal to pay: (1) Defendant has offered shifting justifications for its finding of non-coverage; (2) Defendant had a opportunity to inspect the roof prior to writing the policy and voiced no concerns regarding roof installation; (3) Defendant ignored its own expert's conflicting findings regarding whether the damage was caused by a single storm event or over time; (4) Defendant ignored the report from the adjustor that there were uplifted roof panels due to wind.

Defendant submitted affidavits stating that it investigated the claims, and on the basis of the investigation determined the alleged damage was not covered under the policy. Plaintiff has

7

provided no evidence from which a reasonable jury could find that Defendant denied payment on the insurance claim in bad faith. In fact, Plaintiff's argument on the bad faith claim contains no cites to the record at all, let alone any evidence to conclude that Defendant acted in bad faith. The Court is not obligated to scour the record to find support for the parties' arguments. *Shorts v. Bartholomew*, 255 F. App'x 46, 50 (6th Cir. 2007).

Accordingly, Defendant's motion for summary judgment on the claim of bad faith is GRANTED.

### C. Punitive Damages

Punitive damages may be available where there is proof that the defendant acted intentionally, fraudulently, maliciously, or recklessly. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 211 n. 14 (Tenn. 2012). The parties set forth the same arguments and evidence here as on the claim for bad faith denial of payment of an insurance claim. As with the bad faith claim, Plaintiff's argument is completely devoid of citations to the record. Accordingly, Defendant's motion for summary judgment on the issue of punitive damages is GRANTED.

### D. Tennessee Consumer Protection Act

Plaintiff concedes that its claim under the Tennessee Consumer Protection Act is unavailable as a matter of law. (Doc. No. 35 at 6). Accordingly, Defendant's motion for summary judgment on this claim is GRANTED.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment **GRANTED** as to the claims for statutory bad faith and punitive damages and **DENIED** as to the claim for breach of contract. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR
UNITED STATES DISTRICT JUDGE