IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| BETHEL CHAPEL AME CHURCH, INC., and HELPING HANDS HOME IMPROVEMENT, INC. | ) ) ) ) |
| Plaintiffs, | ) ) NO. 1:19-cv-00016 |
| v. | ) ) JUDGE CAMPBELL ) MAGISTRATE JUDGE HOLMES |
| CHURCH MUTUAL INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Defendant Church Mutual Insurance Company's ("Church Mutual") renewed motion for judgment as a matter of law, and, in the alternative, motion for a new trial. (Doc. No. 84). Plaintiffs Bethel Chapel AME Church ("Bethel Chapel") and Helping Hands Home Improvement, Inc. ("Helping Hands") filed a response in opposition, (Doc. No. 89), and Church Mutual filed a reply (Doc. No. 90). For the reasons stated below, the motions will be DENIED.

### I. BACKGROUND

Bethel Chapel filed this case on January 20, 2019, claiming Defendant Church Mutual breached a contract of insurance when it denied coverage for damages to Bethel Chapel's roof. (Doc. No. 1). Helping Hands was later added as a plaintiff.[1] (Doc. No. 30). The claim for breach of contract was heard by a jury on February 9-11, 2022.[2] At the close of Plaintiff's proof, Church

---

[1] For ease of reference and because Bethel Chapel is the insured party, the Court refers to the plaintiffs in the singular.
[2] The trial transcript is available at Doc. No. 81 (PageID# 1299-1446), Doc. No. 82 (PageID# 1447-1669), and Doc. No. 83 (PageID# 1670-1720). The transcript is cited herein as "Tr. # [PageID]."

Mutual moved orally for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. (Tr. #1526-27). The Court denied the motion. (Tr. #1528-29). The jury returned a verdict in favor of the Plaintiff in the amount of $98,256.49. (Doc. No. 76). The Court entered a judgment in conformity with the jury verdict. (Doc. No. 80). On March 17, 2022, Church Mutual filed the pending post trial motion seeking judgment as a matter of law or, in the alternative, a new trial. (Doc. No. 84).

## II.     STANDARD OF REVIEW

**A.  Renewed Motion for Judgment as a Matter of Law**

A renewed motion for judgment as a matter of law "may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005). "A Rule 50(b) motion is only a renewal of the preverdict motion, and it can be granted only on grounds advanced in the preverdict motion." *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 780 (6th Cir. 2020). In diversity actions, where the Rule 50(b) motion is based on a challenge to the sufficiency of the evidence, a state-law standard of review applies. *See K & T Enterprises, Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996). The Tennessee law standard is not meaningfully different from the federal standard:

> [a] post-trial motion for the entry of judgment in accordance with a motion for directed verdict made during the trial must be gauged by the usual rules relating to directed verdicts. Those rules require that the trial judge, and the appellate courts, take the strongest legitimate view of the evidence in favor of the [opponent of the motion], allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A

> verdict should not be directed during, or after, trial except where a
> reasonable mind could draw but one conclusion.

*Cansler v. Grove Mfg. Co.*, 826 F.2d 1507, 1510 (6th Cir. 1987) (quoting *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977)).

**B. Motion for a New Trial**

Under Federal Rule of Civil Procedure 59(a)(1)(A), "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party ... for any reason for which a new trial has heretofore been granted in an action at law in federal court." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1065–66 (6th Cir. 2015). The Sixth Circuit has interpreted the language of Rule 59(a) to mean that a new trial is warranted when a jury has reached a "seriously erroneous" result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias. *See id.* at 1066 (citation omitted). When the ground for the new trial is that the verdict was against the weight of the evidence, "the court is not to set aside the verdict simply because it believes that another outcome is more justified … the court is to accept the jury's verdict 'if it is one which reasonable could have been reached.'" *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007). A verdict "should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *J.C. Wycoff & Assoc., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991). Moreover, "a motion for a new trial will not be granted unless the moving party suffered prejudice." *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004). "The burden of showing harmful prejudice rests on the party seeking the new trial." *Id.* (citation omitted). A trial court has broad discretion to determine whether the moving party has identified

3

sufficient grounds to obtain a new trial. *See Cummins v. BIC USA, Inc.*, 727 F.3d 506, 509 (6th Cir. 2013).

### III.    ANALYSIS

**A.  Testimony of Plaintiff's Expert Steve Prosser**

Defendant argues the Court should grant a new trial because, after considering the testimony of Steve Prosser, the jury rendered a verdict against the weight of evidence. (Doc. No. 85 at 5-13). Defendant argues Prosser "should not have been permitted to testify as an expert" because his testimony did not meet the standards for admissibility. (*Id*.). The arguments raised are similar to those raised in Defendant's pre-trial motion to exclude the testimony of Steve Prossser, which the Court denied. (*See* Doc. Nos. 51, 58). Defendant now reraises the arguments regarding Prosser's reliability.

Federal Rule of Evidence 702 governs the admissibility of an expert witness's testimony at trial. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"[T]he trial judge has discretion in determining whether a proposed expert's testimony is admissible based on whether the testimony is both relevant and reliable." *Palatka v. Savage Arms,*

4

*Inc.*, 535 F. App'x 448, 453 (6th Cir. 2013) (quotation omitted). The Court's task is to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and... whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. In *Kumho Tire Co. v. Carmichael*, the Supreme Court extended *Daubert* to nonscientific expert testimony, requiring that, "where such testimony's factual basis, data, principles, methods, or their application" are called sufficiently into question, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." 526 U.S. 137, 149 (1999).

However, the court does not exclude expert testimony "merely because the factual bases for an expert's opinion are weak." *Daniels v. Erie Ins. Grp.*, 291 F. Supp. 3d 835, 840 (M.D. Tenn. 2017) (quoting *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012)). "Indeed, rejection of expert testimony is the exception rather than the rule—the gatekeeping function established by *Daubert* was never intended to serve as a replacement for the adversary system." *Id*. (internal quotation marks and citation omitted).

In the instant motion, Defendant again argues that Prosser's opinion was not sufficiently reliable. Defendant cites acknowledged inaccuracies in Prosser's expert report regarding the date of an alleged windstorm and the existence of hail damage, and argues his opinions are not factually supported. Specifically, Defendant argues that Prosser "completely disregard[ed] all other issues associated with the building including what kind of repair [was] required, the apparent disrepair of the roof, and improper installation [and] misrepresented to the court that the water intrusion was caused by an unidentifiable windstorm, despite his knowledge that other causes related [to] the installation and maintenance of the roof [were] just as likely." (Doc. No. 85 at 8-9). In addition, Defendant takes issue with Prosser's opinion that the entire roof needed replacement due to

5

saturation of the substrate because Prosser stated that he did not perform any test to determine whether the substrate was, in fact, saturated. (*Id*. at 9). Defendant argues that these "inaccurate statements of fact" confirm Prosser did not have a basis for his opinion and confirm that he failed to "act with the requisite intellectual rigor required of a structural engineer." (*Id*. at 12-13).

The Court does not find that any of these issues required exclusion of Prosser's testimony under Fed. R. Evid. 702. Rather, all of the points raised by Defendant go to the weight of Prosser's opinion regarding the cause of damage to the roof and the remedy for that damage. Indeed, Defendant cross examined Prosser at length about the date of the alleged storm, the absence of hail damage, the steps Prosser took to evaluate the roof, alternative explanations for the water leak, and the sub-par installation and maintenance of the roof. (Tr. #1405-1438). To be sure, Prosser exhibited a lack of attention to detail when drafting his expert report. He explained that he used a template to write the report that he "failed to take a few things out." (Tr. #1442:22-35). This may have affected his credibility to the jury, but ultimately, it was for the jury to decide what weight, if any, to give his opinion.

In summary, the Court finds Defendant's assertion of error in admitting the testimony of Steven Prosser to be without merit.

### B. Sufficiency of the Evidence to Establish Breach of Contract

Defendant next argues that Plaintiff did not establish a legally sufficient basis for the jury to enter a verdict for the Plaintiff on the claim for breach of contract. Specifically, Defendant challenges Plaintiff's proof regarding whether it suffered a covered cause of loss within the policy period. Defendant further argues that even if Plaintiff has established a loss for which there is coverage under the policy, Plaintiff is not entitled to payment because it did not satisfy two contractual requirements for payment of the claim: repair or replacement the roof and mitigation.

Under Tennessee law, "an insurance policy is a contract, and as such, [the court's] analysis must be grounded in principles of contract law." *Christenberry v. Tipton*, 160 S.W.3d 487, 492 (Tenn. 2005). Thus, the terms of an insurance contract "should be given their plain and ordinary meaning." *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012). Where the language of the policy is clear and unambiguous, the court must give effect to that meaning. *Id*. The policy must be construed "as a whole in a reasonable and logical manner" and the language "should be examined in the context of the entire agreement." *Id.*

1. Covered Cause of Loss within the Policy Period

The insurance policy provides coverage for "direct physical loss" to the property that is caused by a covered cause of loss. (Tr. #1601:22-26 – #1602:1-9; *See also*, Def. Ex. 13). Defendant does not dispute that wind damage is a covered cause of loss and if there had been wind damage to the church roof, it would be covered by the policy. (*See* Tr. #1602:4-5). With regard to the damage to the interior of the building, Defendant states that policy provides coverage only if the interior damage is caused by damage to the exterior of the building, (*i.e.*, damage to the roof) caused by a covered cause of loss (*i.e.*, wind). (*See* Doc. No. 45 at 19 (citing Tr. #1590:13-16; #1603:22-25)). The policy does not provide coverage for damage caused by wind driven rain and continuous seepage or leaks that are not the result of covered damage to the exterior of the building. (Tr. #1603:3-10; Def. Ex. 13).

Plaintiff does not dispute Defendant's interpretation of the policy language. At issue is whether there was damage to the roof caused by wind during the policy period and whether the interior damage to the church was the result of wind damage to the roof. Defendant argues that it is entitled to judgment as a matter of law and/or a new trial because there is "a complete absence of proof supporting Plaintiff's contention that a windstorm cause damage to the roof" and "the

7

weight of the evidence does support that the water intrusion reported by Plaintiff falls squarely under the leakage limitation of the policy." (Doc. No. 85 at 21). Defendant notes that Plaintiff provided evidence from three witnesses concerning wind damage to the roof, and argues that their testimony and corresponding exhibits did not establish a legally sufficient basis for the jury to conclude that the roof was damaged by wind during the policy period. The Court disagrees.

Steve Prosser testified that the roof showed signs of wind damage. Hunter Pierce also testified that there were uplifted roof panels. Rev. Trent Ogilvie testified that he believed the damage was caused during a strong storm in May. Rev. Ogilvie acknowledged that there was previous water damage to the interior of the building, but that the storm in May had caused the water intrusion to become worse. (Tr. #1338:1-17). Additionally, there was evidence that the insurance company paid for wind damage to the roof of the parsonage and interior water damage associated with that damage. (Tr. # 1665:5-12; #1586:9-12; #1609:10-25). Lynn Renlund, a senior claims specialist from Church Mutual Insurance Company, stated all of the potential dates of loss were within the policy period. (Tr. # 1609:19-25 ("It could have happened on any one of those dates that everybody keeps bringing up. I think we've had, what five – five, six different dates – potential dates of loss, but there're all within the policy period. So regardless they would have been within the coverage period of the policy.")).

From this evidence a reasonable jury could conclude the church roof was damaged by wind within the covered period. Defendant makes much of the sub-par installation and numerous repairs made to the roof, but the jury could have reasonably concluded that an already imperfect roof was damaged by wind within the policy period. In fact, Lynn Renlund testified that, "If there had been wind damage, even to this roof, there would have been coverage." (Tr. #1614:15-16).

8

Case 1:19-cv-00016   Document 94   Filed 01/30/23   Page 8 of 12 PageID #: 1800

Because reasonable jurors could conclude that the church roof was damaged by wind during the policy period, neither judgment as a matter of law nor a new trial is appropriate for failure to establish a covered loss.

2. Conditions for Payment

Defendant next argues that even if Plaintiff did establish that the roof was damaged by wind, Defendant was not obligated to pay the claim because Plaintiff failed to mitigate their damages or repair the roof. The relevant policy provisions are as follows:

> We will not pay on a Replacement Cost basis for any loss or damage: (a) Until the lost or damaged property is actually repaired or replaced; and (b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.
>
> …
>
> [The insured] is required to take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property … we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

(Def. Tr. Ex. 13).

Neither of these policy provisions absolve the Defendant from paying the claim. Although failure to mitigate may result in loss of coverage for "subsequent loss or damage," the plain language of the policy indicates that failure to mitigate does not result in non-coverage for the original covered loss.

With regard to the failure to repair or replace the roof, this provision applies only to payment for replacement cost. Even if the insured does not repair or replace the damaged property, it is nevertheless entitled to payment on its claim for the actual cash value of the loss. (*See* Tr. #1580:14-25 – #1581:1-11). In fact, Lynn Redlund stated that it was the typical practice to pay the

9

insured the actual cash value up front and then once the repair or replacement is completed, Defendant would pay the remainder of the replacement cost. (Tr. #1581:3-17).

Accordingly, neither of these policy provisions show that Defendant is not obligated to pay on a claim that is otherwise subject to coverage under the policy. Therefore, Defendant has not shown that it is entitled to judgment as a matter of law or a new trial on this basis.

C. **Sufficiency of the Evidence on Damages**

Defendant argues that Plaintiff's evidence of damages – an August 2018 estimate for the replacement of the roof – is inadequate proof and provides an insufficient basis for a jury to make a "fair and reasonable assessment of damages" to a degree of reasonable certainty. (Doc. No. 85 at 23-24). Defendant contends that the policy provides that the value of covered property is determined "as of the time of loss or damage" and because the estimate provides replacement costs as of a later date, Plaintiff has "offered no evidence of the correct measure of damages" and due to the "complete absence of proof on the material issue of damages," the Court should enter judgment as a matter of law in favor of Defendant. (*Id*. at 24-25 (citing Def. Ex. 13)).

In making this argument, Defendant relies on two principles. First, that the liability of an insurer is "fixed at the time of loss." (*Id*. (citing *Metropolitan Life Ins. Co. v. Brown ex rel. Fleming*, 160 S.W.2d 434, 437-38 (Tenn. Ct. App. 1941))). Second, that the Plaintiff is not to be put in a more favorable position that it would have been had the Defendant fully performed the contract. (*Id*. (citing *Plough, Inc. v. REI, Inc*. 9 F.3d 1548 (Table), 1993 WL 469080 at *8 (6th Cir. 1993))). While the second proposition is well established, the Court in *Metropolitan Life Ins. Co*., which concerns assignment of interest in a cash value life insurance policies, is not applicable to the breach of contract claim. 160 S.W.2d 434.

Plaintiff argues that it is entitled to damages sufficient to put it in the position it would have been in if the contract had been fully performed and that the damages awarded are not improper. (Doc. No. 89-1 at 16 (citing *Wilhite v. Brownsville Concrete Co.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990))). The Court agrees.

"The purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed." *Riad v. Erie Inc. Exchange*, 436 S.W.3d 256, 274 (Tenn. Ct. App. 2013) (citing *Wilhite*, 798 S.W.2d at 775). "While the amount of damages to be awarded in a given case is not controlled by fixed rules of law or mathematical formulas, [] the evidence upon which a party relies to prove damages must be sufficiently certain to enable the trier of fact, using its discretion, to make a fair and reasonable assessment of damages[.]" *Id*. at 275 (citing *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 230 (Tenn. Ct. App. 2006)); *see also*, *Pankey v. Southern Pioneer Property*, 2014 WL 11514533 at *2 (W.D. Tenn. Aug. 12, 2014) (collecting cases and holding that damages for breach of an insurance contract are not limited to recovery of the insured loss and may include all damages that are the reasonable and foreseeable consequence of the breach).

Plaintiff presented evidence from which the jury could conclude that, if Defendant had not improperly denied Plaintiff's claim, Plaintiff would have repaired the roof and been entitled to the replacement cost of the roof. Considering the lapse in time between the denial of the claim and the jury verdict, the Court does not find it unreasonable for the jury to rely on an estimate of the cost to replace the roof one year after the date of loss.

The Court finds the jury's award of compensatory damages to be a fair and reasonable assessment of the damages sustained by Plaintiff as a result of the breach of contract. Accordingly,

entering judgment as a matter of law or ordering a new trial on the basis of the award of damages being unsupported by the evidence is unwarranted.

### IV. CONCLUSION

For the reasons stated, the Defendant's Renewed Motion for Judgment as a Matter of Law, and in the Alternative, Motion for a New Trial (Doc. No. 84) will be **DENIED**. An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE